# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| STEVE J. BENOIT )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | Case No. 13-CV-4482<br><br>Judge Sharon Johnson Coleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Steve J. Benoit, seeks review of the Social Security Administration's decision denying him disability benefits. For the reasons that follow, this Court affirms in part, vacates in part, and remands this matter for reconsideration as set forth in this opinion.

**Procedural Background**

On February 22, 2011, Benoit filed an application for disability insurance benefits alleging that he was disabled beginning on September 23, 2009, based on numerous ailments including COPD, sleep apnea, CAD, hypertension, scoliosis, a pinched nerve, a lack of adrenal gland, and arthritis. Benoit's application was initially denied on July 1, 2011. Benoit's motion for reconsideration was subsequently denied on September 12, 2011. On July 3, 2012, ALJ Victoria A. Ferrer held a hearing, at which Benoit and a vocational expert testified. The ALJ subsequently issued a written decision on August 17, 2012, finding that Benoit was not disabled under sections 216(i) and 223(d) of the Social Security Act. The Appeals Council denied Benoit's request for review, rendering the ALJ's decision final. Pursuant to 42 U.S.C. § 405(g), Benoit filed the complaint for judicial review now before this Court.

**Factual Background**

Benoit, who was born in 1953 and completed high school in 1972, worked as a full time electrician from 1980 until 2009. (A.R. 106, 142). Prior to his disability, Benoit had a history of coronary artery disease and had received treatment for chronic obstructive pulmonary disease, hypertension, and asthma. (*Id.* at 190). Benoit also had a diagnosis of mild polyneuropathy and irritation of the lumbosacral sensory nerve root ganglia, which caused him to suffer from lower back pain. (*Id.* at 312–14).

On June 10, 2011, Dr. Peter Biale conducted a physical examination on Benoit and determined that he suffered from (1) hypertension; (2) COPD / Brachial Asthma which resulted in shortness of breath with minor exertion; (3) sleep apnea; (4) a past history of coronary artery disease; (5) lower back pain and limited lumbosacral spine movement; (6) limited cervical spine movement; and (7) obesity, which impacted Benoit's lumbosacral spine movement and his breathing difficulties. (*Id.* at 193). Among other things, Dr. Biale found that Benoit had a limited range of motion of his lumbosacral spine, with a flexion of 30 degrees, and extension and lateral flexion of 10 degrees. (*Id.* at 192). Dr. Biale also noted that, although able to walk normally, Benoit had some difficulty getting onto and off of the examination table due to his obesity and lower back pain. (*Id.*).

A medical source statement was also provided by Dr. Lopez, one of Benoit's treating physicians, in April 2012. Dr. Lopez diagnosed Benoit with COPD Sleep Apnea, Emphysema, Lower Back Pain, and Exogenous Obesity, and described his symptoms as exertional dyspnea, severe low back pain, wheezings, fatigue, tiredness, and chest pain, and intermittent claudication. (*Id.* at 261). Dr. Lopez also indicated that if Benoit had a sedentary job his legs would need to be horizontally elevated for 30-40% of an eight-hour workday, that Benoit could only sit for two hours and stand for two hours in an eight hour workday, that Benoit could sit or stand for no more than 30 minutes at a time, that in a work situation Benoit could lift ten pounds only rarely, and that due

to his symptoms Benoit would be off task for at least 25% of the workday. (*Id.* at 262–64). Dr. Lopez further noted that Benoit would likely miss at least four days of work every month due to his impairments. (*Id.* at 264).

Benoit also was subject to two physical residual functional capacity assessments. In both instances, the consulting physician found that Benoit could lift 20 pounds occasionally and ten pounds frequently, that he could stand and walk or sit with normal breaks for six hours in an eight hour workday, that he could occasionally climb ramps, stairs, ladders, ropes, and scaffolds, and that he could occasionally stoop and crouch. (*Id.* at 200–207, 220–27).

Benoit appeared at his hearing with a non-attorney representative. Benoit testified that he had worked as an electrician at McCormick Place until he was laid off in 2009. (*Id.* at 48). He subsequently worked at McCormick Place for six days in February 2010 and six days in December 2010 through temporary union assignments. During these assignments, Benoit was assembling and dismantling lighting trusses. (*Id.* at 36). Benoit left each temporary assignment prior to its completion, in both instances because of exhaust fumes in the building that caused him breathing troubles. (*Id.* at 36, 40–41). Benoit stated that the work that he was doing "was not an easy job" and that it required lifting 20-25 pounds and working on his feet and knees all day. (*Id.* at 46–47). Benoit worked up to 14 hours a day while he was working at McCormick Place in December 2010. (*Id.* at 51).

Benoit testified that he suffered from neck pain, which he managed through drug treatment and exercises (such as riding a recombinant bicycle). (*Id.* at 53). He also took a number of medications for his heart and suffered from intermittent chest pains that could be related to either his heart ailments or to the pinched nerve in his neck. (*Id.* at 54). Benoit also used a C-PAP machine nightly to treat his sleep apnea and took various respiratory medications as needed. (*Id.* at 50). In response to questioning by his representative, Benoit indicated that he limited himself to

3

short shopping trips because he was unable to stand for more than 20 or 30 minutes at a time. (*Id.* at 55).

A vocational expert testified that Benoit had previously worked as a construction electrician, a medium exertion job entailing heavy lifting. (*Id.* at 56). The expert testified that Benoit could not continue to perform that work in light of his limitations (as set forth by the RFC assessments), but that his electrical skills would transfer to light-duty positions such as being a parts-counter salesman or an electrical assembler of some form. (*Id.* at 59). Although Benoit had many of the necessary skills for these positions, the expert testified that Benoit would need 30 days of training to orient him to the work. (*Id.* at 60). In response to questioning by Benoit's representative, however, the expert also agreed that an individual who could walk or stand less than two hours each, could lift no more than 10 pounds, and would be off task 25 percent of the time (which are Benoit's limitations as set forth by Dr. Lopez) would not be able to find gainful employment of any type. (*Id.* at 61).

The ALJ subsequently issued her written decision. In light of the evidence presented, she held that Benoit's severe impairments included chronic obstructive pulmonary disease, bronchial asthma, degenerative disc disease of the cervical and lumbar spine, osteoporosis of the lumbar spine, obstructive sleep apnea, obesity, and hypertensive cardiovascular disease. (*Id.* at 20). She found, however, that Benoit retained the residual functional capacity to perform light work as that term is defined by 20 C.F.R. § 404.1567, with the additional capacity to occasionally stoop or crouch and to occasionally climb ladders, ropes, scaffolds, ramps, or stairs. (*Id.* at 21). She also found, however, that Benoit was subject to the added limitation that he must avoid concentrated exposure to pulmonary irritants, extreme cold, and extreme heat. (*Id.*). In reviewing Benoit's testimony, the ALJ concluded that Benoit's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Benoit's statements about the intensity, persistence, and limiting effects of his symptoms were partially inconsistent with the overall record. (*Id.*). The ALJ also

concluded that she could give no credit to Dr. Lopez's assessments, because they were inconsistent with both the overall record and his own treatment records. (*Id.* at 25). In sum, the ALJ found that Benoit, despite his severe impairments, remained able to engage in gainful employment. (*Id.* at 26). The ALJ also determined that, based on the testimony of the vocational expert and Benoit's residual functional capacity, there were numerous jobs available to Benoit that would require only minimal vocational adjustment and that would accommodate his residual functional capacity. (*Id.* at 27). Based on that finding, the ALJ held that Benoit was "not disabled" under sections 216(i) and 223(d) of the Social Security Act. (*Id.* at 28).

**Legal Standard**

This Court must affirm the ALJ's finding if it is supported by substantial evidence and is not the result of an error of law. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pepper v. Colvin*, 712 F.3d 351, 361–62 (7th Cir. 2013) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)). Although this Court reviews the record as a whole, it cannot "substitute its own judgment for that of the SSA by reevaluating the facts, or reweighting the evidence to decide whether a claimant is in fact disabled." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003); *Cass v. Shalala*, 8 F.3d 552, 555 (7th Cir. 1993). While the Court's review is deferential, it is not intended to be a rubber-stamp of the ALJ's decision. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). In rendering a decision, the ALJ must build a logical bridge from the evidence to his conclusion. *See Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002). Although the ALJ need not provide a "complete written evaluation of every piece of testimony and evidence," the ALJ may not select and discuss only evidence that favors her ultimate conclusion, but instead must confront the evidence that does not support her conclusion and explain why it was rejected. *Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir. 1995).

**Discussion**

On appeal, Benoit contends that (1) the ALJ's residual functional capacity finding was contrary to the evidence; (2) the ALJ erred by misevaluating Benoit's credibility concerning the nature and extent of his impairments; and (3) the ALJ erred by failing to make a specific finding regarding the vocational adjustment necessary for Benoit to perform other jobs.

A person is disabled under the Social Security Act if "she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(I). The Social Security Administration has set forth a five-step sequential evaluation process for determining whether an individual is disabled (20 C.F.R. § 404.1520(a)). The process of evaluation is as follows: "(1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work, and (5) whether the claimant is capable of performing any work in the national economy." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

*1. Residual Functional Capacity*

The ALJ found that Benoit had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b). Benoit contends that the Court erred in this finding because (1) the ALJ's decision was contrary to record evidence concerning Benoit's limited ability to stoop; (2) the ALJ's decision did not adequately address Benoit's fatigue; (3) the ALJ's decision did not adequately address Dr. Lopez's opinion that Benoit would require leg elevation for a substantial portion of the workday; and (4) the ALJ's decision did not consider the impact of Benoit's obesity on his other impairments.

Benoit first argues that the ALJ erred by finding that he was able to "stoop occasionally." Stooping is defined as "bending the body downward and forward by bending the spine at the waist." SSR 85-15 (Jan. 1, 1985). Benoit asserts that the ALJ's finding that he could stoop occasionally was contrary to Dr. Biale's determination that Benoit's lumbar spine's range of motion was limited to 30 degrees flexion, 10 degrees extension, and 10 degrees lateral flexion, a range which Benoit believes renders him incapable of stooping. According to Benoit, this finding is especially problematic because two of the putatively available jobs that the vocational expert identified require occasional stooping.

In response, the Commissioner argues that, although Benoit may be limited in his range of flexibility when stooping, the evidence does not reflect that he cannot stoop. Although this might be true, this Court notes that the ALJ never made this distinction, indicated what range of motion was necessary in order for an individual to be capable of stooping, or otherwise identified any specific evidence supporting Benoit's ability to stoop (although this Court notes that the residual functional capacity analyses would seem to support this distinction). Rather, the ALJ found that "the residual functional capacity defined above adequately accounts for the limitations revealed during the consultive examination, which are reflective of the claimant's overall functional capacity." (A.R. 24). Because the ALJ did not identify any evidence supporting her conclusion that Benoit could occasionally stoop and did not address or distinguish Dr. Biale's determination of limited flexibility, this Court must find that the ALJ has failed to create a logical bridge from the evidence to her conclusion. *Golembiewski v. Barnhart*, 322 F.3d 912, 917 (7th Cir. 2003) (finding that remand was necessary where an ALJ failed to resolve the conflict between evidence indicating that a claimant could "stoop occasionally" and evidence indicating that motion in the claimant's lower back was limited to 40 degrees of flexion, 15 degrees of extension, and 10 degrees of tilting).

This Court is also not persuaded otherwise by the Commissioner's assertion that this error is harmless because stooping is not a component of the alternative occupations that the ALJ identified. The commissioner is correct that neither occupation's listing in the Dictionary of Occupational Titles explicitly mentions stooping, although some of the activities listed, such as installing components in electrical cabinets, impliedly require some ability to stoop. Moreover, this Court notes that "[a]n ability to stoop occasionally; i.e., from very little up to one-third of the time, is required in most unskilled sedentary occupations," and "a *complete* inability to stoop would significantly erode the unskilled sedentary occupational base and a finding that the individual is disabled would usually apply." SSR 96-9p, 1996 WL 374185 (July 2, 1996). Because, here, the vocational expert's testimony that Benoit could perform these alternative occupations was expressly based on the ALJ's hypothetical of an individual who could stoop occasionally, and because there is no testimony or evidence in the record establishing that Benoit would be able to perform these occupations even if he were unable to stoop, this Court cannot find that the ALJ's error was harmless. Accordingly, the ALJ's findings must be vacated and this case remanded so that the ALJ may reconsider her findings regarding Benoit's ability to stoop.

Benoit also argues that the ALJ erred by failing to address the issue of fatigue. Benoit did not raise the issue of fatigue either in his application for disability or in his hearing testimony, and does not now point to anywhere in the record where the issue of fatigue was addressed. Rather, he argues that the ALJ disregarded the fact that a combination of sleep apnea, shortness of breath, and obesity likely caused him to suffer from daytime fatigue. Because this alleged disability was not reflected by the evidence or raised by Benoit, the ALJ was not obligated to address and dispense with it in reaching her ultimate conclusion. *Diaz* 55 F.3d at 308; *Luna v. Shalala*, 22 F.3d 687, 693 (7th Cir. 1994) (recognizing that it is a claimant's duty, under 20 C.F.R. § 404.1512(a), to "bring to the ALJ's attention everything that shows that he is disabled").

Benoit further argues that the ALJ failed to consider or address Dr. Lopez's opinion that Benoit would require leg elevation for 30-40% of the workday. Although the ALJ did not address Dr. Lopez's specific leg-elevation finding, she did address Dr. Lopez's findings more generally, noting that she gave them "only slight weight" because they were inconsistent with the overall record, including Benoit's own testimony about his capabilities and Dr. Lopez's own treatment records. Thus, although the ALJ did not directly address and refute Dr. Lopez's opinion that Benoit would need to elevate his leg for a substantial portion of the workday, she provided adequate indirect explanation of why that opinion was not incorporated into her ultimate decision. *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009).

Finally, Benoit argues that the ALJ erred by failing to account for the effects of obesity when evaluating each of his specific impairments. The ALJ, however, recognized Benoit's obesity as a distinct disability and took its impact into account in assessing his residual functional capacity. (A.R. 20, 24). Moreover, although the ALJ did not consider the effect of Benoit's obesity on each of his other impairments individually, the medical opinions that the ALJ considered and Benoit's own testimony about his abilities both accounted for his obesity in describing the physical impact of his various conditions. *Cf. Prochaska v. Barnhart*, 454 F.3d 731, 737 (7th Cir. 2006) (finding that the ALJ's failure to address a claimant's obesity at all was harmless where the ALJ relied on the testimony of physicians who had incorporated the claimant's obesity into their medical recommendations). Accordingly, after a thorough review of the record, this Court finds that the ALJ sufficiently addressed the impact of Benoit's obesity on his residual functional capacity.

*2. Benoit's Credibility*

Benoit also contends that the ALJ erred in assessing his credibility. An ALJ's credibility determinations deserve special deference, because only the ALJ observes the claimant testify. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Rather than nitpicking for inconsistencies or

contradictions, courts are to give a common sense reading to an ALJ's opinion and to reverse credibility determinations "only if they are patently wrong." *Id.* Applicants for disability benefits have an incentive to exaggerate their symptoms, so an ALJ may discount an applicant's testimony based on other evidence in the case. *Johnson v. Barnhart*, 449 F.3d 804, 805 (7th Cir. 2006).

Benoit first argues that the ALJ improperly considered his activities of daily living when she found that Benoit's testimony that "he must limit his riding [of an exercise bike] to five minutes does not seem credible." (A.R. 25). Although an ALJ may consider a claimant's daily activities in assessing his alleged symptoms, the Seventh Circuit has cautioned against placing undue weight on a claimant's household activities while assessing their ability to hold a job outside the home. *Craft v. Astrue*, 539 F.3d 668, 680 (7th Cir. 2008). Here, however, the ALJ was not assessing Benoit's ability to hold a job outside the home, but rather the credibility of his testimony that he could not ride an exercise bike for more than five minutes at a time. Moreover, her analysis was based on Benoit's testimony that in December 2010 he worked a fourteen-hour period in a physically demanding job and his "excellent" physical tolerance rating during 2010 cardiac testing, neither of which constitute activities of daily living. Thus, the ALJ did not improperly consider Benoit's activities of daily living in finding that his testimony regarding the exercise bike was not credible.

Benoit next argues that the ALJ should have considered his prior earning capacity as a factor in favor of finding him credible. Under SSR 96-7p, 996 WL 374186 (July 2, 1996), a claimant's prior work record and efforts to work are all factors that an ALJ must consider in assessing the credibility of a claimant's statements. Benoit, however, fails to point to any authorities requiring an ALJ to consider a claimant's prior earning capacity, and this Court can see no reason why the ALJ should have done so here. Because there is no dispute that Benoit can no longer perform his prior employment, what he earned in that employment (which he was laid off from) is irrelevant to the question of whether his statements regarding the extent of his present symptoms are credible.

10

Finally, Benoit argues that the ALJ should not be permitted to rely on Benoit's 2010 work at McCormick Place as a reason to find him uncredible. In support of this argument, Benoit points to 20 C.F.R. § 404.1574(c), which provides that unsuccessful work attempts of less than six months that are abandoned due to an impairment cannot be used to demonstrate that an individual is able to engage in substantial gainful activity. Nothing in that provision, however, states that an ALJ may not consider an unsuccessful work attempt in assessing the credibility of a claimant's testimony regarding his or her physical abilities. *But see Barraza v. Barnhart*, 61 F. App'x 917, 2003 WL 1098841, at *3 (5th Cir. 2003) (recognizing that while unsuccessful work attempts may not be considered as proof of an ability to perform gainful employment, they can be used to call the credibility of the claimant's testimony into question). Here, the ALJ considered Benoit's 2010 work at McCormick Place while assessing the credibility of Benoit's testimony regarding his physical limitations. The ALJ thus did not use the fact that Benoit had worked briefly in 2010 to prove that Benoit remained capable of engaging in gainful employment generally.

Accordingly, Benoit has not met his burden of establishing that the ALJ's credibility determinations were patently wrong.

*3. Vocational Adjustment*

Finally, Benoit contends that the ALJ failed to make a specific finding regarding the amount of vocational adjustment necessary to perform other jobs when determining whether he had transferable skills. To find that a claimant's skills are transferable to other jobs, an ALJ must determine whether the skilled activities that the claimant did in past work can be used to meet the requirements of other jobs, based on the similarity of the occupationally significant work that both jobs require. 20 C.F.R. § 404.1568(d). Accordingly, under SSR 82-41, 1982 WL 31389, (Jan. 1, 1982), the ALJ must identify the claimant's acquired work skills and the specific occupations to which the acquired work skills are transferable.

Here, the ALJ found, in pertinent part, that Benoit's work skills (which she identified as knowledge of electrical phenomenon, wiring, and tools) were transferable to other occupations such as being a parts counter clerk or an electrical assembler, and that therefore minimal vocational adjustment would be required. This finding was based almost exclusively on the testimony of the vocational expert, who opined that Benoit could perform jobs such as counter parts salesman and electrical assembler without any additional skills. The ALJ, however, failed to elaborate in any detail on what the work skills required by the alternative occupations were, and therefore failed to adequately support her conclusion that Benoit's skills were transferable and that minimal vocational adjustment would be required. *Abbott v. Astrue*, 391 F. App'x 554, 558 (7th Cir. 2010) ("The transferability of skills is a determination entrusted to the ALJ, not the VE . . . and we review the actual reasons given by the ALJ without speculating about what the ALJ might have considered."). Accordingly, and in light of the fact that this matter is already being remanded, this Court further remands this case so that the ALJ may reconsider her findings regarding vocational adjustment. *Id.*

**Conclusion**

For the foregoing reasons, the decision of the ALJ is affirmed in part, vacated in part, and remanded so that the ALJ may review her RFC assessment and provide further findings of fact about Benoit's acquired skills and how those skills transfer to the proposed alternative occupations.

IT IS SO ORDERED.

Date:   March 17, 2016

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge